Ben Coleman for appellant Gary Henry. My plan consistent with the briefing was to start with the Speedy Trial Act and then move on to the Pinkerton if that was okay with the court. Beginning with the Speedy Trial Act, it's our position that there are really two errors here. The first I would characterize as more procedural and then the second substantive. We believe that both are controversial in this case. Starting with the procedural error, it's our position that the district court failed to conduct hearings which it was required to do under this court's precedent such as United States v. Lloyd and then its findings itself were insufficient. It never addressed the relevant standard in the case which is the reasonable standard that is set forth in cases like preceded under the assumption that a continuance that applies to the co-defendants automatically applies to Mr. Henry as well. I think it was... Mr. Coleman, was there a motion to sever filed at any point? There was not, Your Honor. However, Messer makes clear that a motion to sever is not is not required and you know frankly the the objections when a defendant is objecting saying that he wants his trial, a speedy trial under the act and the others aren't, it's obvious that one... that's almost like a de facto severance motion but in any event, Messer makes clear that severance and severance motion is not required. What do we do with the fact, Mr. Coleman, that on at least some of the continuances and not all, the counsel for Mr. Henry objected that is but at the same time said I need more time. I'm not ready. Correct, Your Honor. What is the judge to do when confronted with seemingly inconsistent requests? I do want to comment on one aspect of what the what the lawyer did but I do think that there is a clear route for a district court to take. Why don't I start with the latter first. What a court is supposed to do under this court's precedent is conduct a hearing and make an inquiry and determine if in fact the lawyer wants more time but the actual defendant doesn't, wants to assert his rights, the judge is supposed to have a hearing and figure out what's going on. You know, are there accommodations that can be made to satisfy the defendants and particularly a detained defendant who's in custody, his right to a speedy trial. So that's what a court is supposed to do and that's one of the errors that occurred here is that that just wasn't done. I would note that the trial lawyer never signed any of the stipulations to continue. Mr. Henry's lawyer didn't. The government did make representations in the stipulations about Mr. Henry's trial attorney's schedule and things like that but the lawyer himself never signed the stipulations and again one of the problems in this case and we set this out in our reply brief is that some of the representations, I would characterize them as false at the very least they were misleading. For example, the government said in one of the stipulations that the lawyer had a trial scheduled for a particular date. The lawyer was relieved from that case and wasn't even a lawyer on that case. He had been relieved two months earlier. So the representations were, you know, at least in that one particular stipulation were false if not misleading and that's the point of having a hearing is the court is supposed to inquire can we can we move trials around? What really is your schedule? Do you really need this time? What tasks still need to be completed? Mr. Coleman, Mr. Coleman, can I ask you a question about hearing? There's plenty of authority that hearings can be on the papers and certainly the lawyer had an opportunity to correct the false. Why isn't, why is more required? Well, the more is required and I agree that if everyone's on the same page, if there are no disputes, then there's a good chance that the judge can simply rule on the papers. But when you have a detained defendant who is objecting and seeking to have a speedy trial and particularly when you look at the length of the delay here and maybe it's one thing if everyone's dipping in on the papers for a relatively brief continuance of the trial. But when you're talking about continuing the trial out well past the 70 days, this trial didn't occur for approximately a year later, and when there's a, when one of the defendants is objecting, at that point there, under this court's precedent, there's a, there's a duty to conduct a hearing and an inquiry and that just was never done. In addition to our procedural, you know, our claim of procedural error, which we think requires reversal because you, because you cannot after the fact make the requisite findings and conduct the requisite hearing, we think on the merits it was unreasonable to continue this case over Mr. Henry's objection. And I think the really three main factors here as to why it was unreasonable. One is the, as I just mentioned, the length of the delay. This was a fairly lengthy continuance. It wasn't just over the 70 days. It was well beyond the 70 days. Number two, the fact that Mr. Henry was detained. In Messer, for example, the defendants weren't even detained. They were out of custody. Here we have a detained defendant. And then number three, the prejudice, and this is supported by the Hall case. The government was able to obtain perhaps up to three cooperating witnesses to testify against Mr. Hall during this delay. They had the co-defendant Santos, who they were able to get his testimony during the delay. There was a jailhouse informant, Edwin Carr, who they were able to get. And then there was also a co-conspirator who was separately charged named Norman Speck. And they were able to obtain all three of their testimonies based on the delay. So there was significant prejudice to Mr. Henry. And when you take those three factors, the length of the delay, the fact that he was detained, and the fact that there was significant prejudice here, we think it was unreasonable under the Messer and Hall line of cases to grant the continuances over Mr. Henry's objection. I thought the issue, though, in Hall was, or at least a large part of the reason why the delay was found to be unreasonable as to the objecting defendant, was that one of the purposes toward the end, when the trial kept getting put out, put off, one of the main purposes of the delay was to allow one of the other defendants to engage in plea negotiations. And obviously that could not be reasonable as to the objecting defendant. Here, on the other hand, of course, the purpose of the delay was simply, as is permissible, to ensure a joint trial. And I guess I'm wondering what your response is to that. Well, I do agree that in Hall there was, in at least one of the continuances, there was mention of plea negotiations, and there was none here. But I still think at the end of the day, Mr. Henry suffered prejudice in the fact that they were able to obtain the three witnesses. And even if... May I ask a question, Mr. Coleman? I'm sorry to interrupt you, but it bears on exactly what you're saying. Does the government's purpose in getting the additional time have to be in order to obtain a cooperating defendant's testimony? Or is it, is that not a necessary element of a finding for us to grant the relief that you're seeking? I don't believe it's a necessary finding. And I think both Hall and Messer say that it's a totality of the circumstances test. That may be something that a factor that the court may want to consider in the whole mix of the analysis, but I still think that when you talk about the length of the delay, the fact that he was detained the entire delay, and that he did suffer prejudice, whether it was based on the government's purpose or not, he still did suffer prejudice. And when you look at all those factors together, there is no required finding. It's a totality of the circumstances test. And when you look at those, that totality of circumstances, I don't think that that... I think my position is that this case is actually worse than Hall and Henry, given the length of the delay, his detention, and that there are three witnesses that we're talking about that ultimately testified against him as a result of the delay. So for all those reasons, we believe that there should be reversal. The typical rule in this in this circuit is that the determination of dismissal with or without prejudice is made by the district court in the first instance, and we think that would be the appropriate course in this case as well if the court were to reverse. In the few minutes I have left, I did want to just briefly discuss the Pinkerton issue. And I do want to focus specifically on the crime of violence context after Davis. Before I do that, I just wanted to make one general statement, which is that Pinkerton has received a fair amount of criticism over the years. But in fairness to Pinkerton, I think it's because the courts have interpreted Pinkerton to say something that it didn't say. The Supreme Court in Pinkerton never said that Pinkerton applies to non-objects of the conspiracy. It didn't cite any case, a case or any case that ever allowed that type of liability. But courts have gone ahead and allowed Pinkerton liability even for offense, substance offenses that aren't the object of the conspiracy. And that and that's just not what Pinkerton was designed to do. And that we believe that's an overreading of Pinkerton. But in any event, focus posted. I assume you recognize that at least on that point, we have a quite a lot of binding circuit precedent that we're sort of powerless to do anything about, right? Well, I do agree that there are lots of cases that have applied Pinkerton to non-objects without really considering the issue. I don't think any of them have actually rolled up their sleeves and said, well, let's take a look at this. You know, Pinkerton, the substantive offense that was involved was the object of the conspiracy. I don't think any court has done that. And the government hasn't cited any pre Pinkerton case that ever ever did that. There is no common law history of holding people accountable under conspiracy theory of liability for offenses that were not the object of the conspiracy. That's just something that the courts took Pinkerton and ran with the lower courts without any justification. That's a lot of that's a lot of case law that's built up over the years. Pinkerton is not exactly new authority. Absolutely. I mean, I agree that they're there and Judge Lossberg. Yes, they're including nine circuit cases that do that. I just think they've done that without realizing that they've extended Pinkerton to something that Pinkerton never permitted. But I do want to discuss the crime of violence issue, and that is that after Davis, because the residual clause is no longer in existence, the crime of violence, the defendant has to have the intent to use the violent force. And Pinkerton doesn't require that type of intent. It just requires reasonable foreseeability. Um, so that if so, it's our position now that Pinkerton cannot apply to 9 24 C, at least in the crime of violence context, because the defendant has there any case that said that there is our Mr Coleman. Is there any case that said that? No, there's not. I believe this is an issue of first impression. I mean, Davis is only about a year or so old, and there's not a lot of law out there on it. Post Davis. But that the, um, as it stands right now, because the residual cost is no longer in existence, there needs to be that intent requirement. So Pinkerton cannot apply. Help me. Help me understand why Davis has anything to do with what we're talking about. If the defendant is found liable for the act for the acts of his co conspirators under Pinkerton, certainly, um, the, uh, you know, his co conspirator has to have acted with whatever intent was required to make it a crime of violence. So in this case, you know, knowingly and potentially using the firearm. Um, and Pinkerton is just saying you are going to be held liable as a principle for that offense. Um, you know, whether you see why the why Davis is coming along affects in any way the analysis that we well, it's our position that if that is the analysis, then then there are no federal crimes of violence because every crime of violence you look for the categorical approach, you look at accessorial liability. And then for every crime of violence, if you can be convicted under a Pinkerton theory, then no, no federal offense requires the intentional use of force because it only would require reasonable foreseeability on that. So that's why we think the less expensive alternative is just to say Pinkerton doesn't apply to 9 24 C context, at least in the crime of violence. But if the court is going to just simply look at what's what one co conspirators intent is, and every offense, I mean, Pinkerton liability applies to every federal offense, and intentional use of force. No, no. Is that different from aiding and abetting? Well, aiding and abetting requires the intent. I mean, for to aid to aid in the bed in the bedding liability, you have to have the intent to use force. Um, but for Pinkerton liability, you don't. You just have to have reasonable foreseeability. And that's why we think Pinkerton is different. I say I have just a few seconds left. There were no other questions. I was I would save a little time. Sure, it will certainly give you time for a bottle. Okay, let's hear from the government. Good morning, Your Honor's David Ransom Friedman. The United States may please the court. I'd like to start by addressing this speedy Trial Act claim, which is the focus of much of the defendant's argument. Um, at the outset, the government does believe that this claim is waived, at least in part. And I think the most compelling reason is that the defendant's own counsel represented and requested the 2nd and 3rd continuances and said that he needed more time to prepare. But even if you know that, how do we know that? Since, as I understand it, counsel did not, in fact, sign any any of the at least the latter two stipulations. Well, Your Honor, I believe he still conveyed that information to the government and authorized the government to make that representation on his behalf. He certainly did not sign the stipulation. But we have that. We have the problem of Lloyd, then, because that's what happened in Lloyd. And we said that that's not acceptable, at least not without further inquiry by the district. Well, Your Honor, I think the issue in Lloyd was that the that the affidavit was not sufficiently specific. You had an affidavit from 1 1 attorney that really only really only said that there was one date that was that was a scheduling conflict, and the court decided that was not sufficient to to the problem in Lloyd was that there were representations made about the unavailability of co counsel who did not themselves say anything, at least in writing to the court. And I thought we faulted the district court there for merely accepting at face value the representation of one lawyer as to the unavailability of other lawyers who were not who were not signatories to the affidavit. Seems like we have the same problem. Your Honor, I think that was part of the facts in Lloyd. But I do believe the court also placed a lot of weight on the fact that the representations were very vague and really didn't identify any conflicts. And here I think there are much more detailed. But even if the court does not find the wave argument compelling, I don't think there's any procedural error or otherwise here. This court has never held that that that a district court needs to hold a hearing, and the speedy trial act certainly doesn't hold that in this situation. Defendants are alive. I presume. Yes. Yes, Your Honor. Of course. And in this case, the defendant relies heavily on Lloyd. But ultimately, even in Lloyd, this court didn't say that hearing was required. I think if you look at foot one of the footnotes, I believe footnote number eight, the court said that if the affidavit had been more detailed, it would have been sufficient for the courts rely on it. And in this case, we do think the district court didn't. There was no air not holding the that there was a hearing held on the first continuance, and the defendant and his counsel were present in the district court addressed the defendant and said it was going to not. It was going to grant the continuance over subjection and asked the defendant had anything to say, and the defendant didn't respond. He didn't ask. He didn't say anything. So in this case, I don't I don't think the defendant is really identified. Why? First, what? What is the text will hook for this? Why? What under the speedy trial? After this, this court's case, I will require a hearing when this court has said repeatedly that continuances can be granted on the basis of stipulated findings. And second, what would have happened at this hearing? What? What? What would have been? Um, what would have? What would have? The court would have been inquiring into, especially when it did have this representation, whether signed or not, that that the defendant's counsel needed more time to prepare for trial. So the court could find out if that was in fact true, right? Um, and certainly I think your opponent is correct that there needs to be some inquiry. Doesn't there? Uh, I said that apparent conflict between the needs of counsel and the desires of his client. Well, Your Honor, again, I think the court can rely on that representation, and the government submitted it. I don't I don't think there's any in any allegation that that that was a liar that the government submitted a false representation on behalf of defense. You just heard it this morning, and it was stated in the briefs. Some of the information you you're you're I don't know. We're I don't I don't know if I would say that information was not accurate. I think, as is common in these situations, the defendant had a defense lawyer who was on the panel. He had trial dates that were moving around quickly, so I don't think it's surprising that some of these dates were maybe stale or that the defendant's counsel represented. He had a trial in a particular date, and then that date changed. Um, and ultimately, I think I don't think there's any reason for an inquiry. I don't I don't think there's any reason for the court to believe that representation was false. Uh, and even apart from that, it wasn't necessary to obtain the defendant's assent to grant the continuances. This court has held that other one codefendant can bring along another codefendant in a continuance if the continuance is reasonable. And I think, subsequently, the continuance was all three continuances were reasonable in this case. And as we explained our brief, each continuance was was supported by factual findings that were adopted by the court and was granted for numerous reasons that this independent independently sufficient to grant continuances. And, you know, just the three reasons I think for the complexity of the case, and that's not really in dispute. The fact that the other attorneys needed more time to prepare and for the first continuance, at least the fact that one of the defendants had just joined the case Santos and needed time to get up to speed. So I think even if the court had concerns, there was no need to inquire further because it could still determine that those continuances were case. And in that respect, I do think this case is very different from Hall, as your honor pointed out, in Hall, one of the defendants obtained a continuance for the express purpose of plea negotiations. What this court recognized was that was improper, because if you're gonna have one defendant bringing on another defendant, the continuance needs to be for the purpose of ensuring a joint trial. In this case, we don't have that sort of evidence. The continuance is not state work. They were for the purpose of plea negotiations. And at the time, I think everyone was planning to go to a joint trial. And I would direct the court in particular to the third continuance, which was granted in late January, just a few months before the trial. That continuance was granted in a lengthy order that also covered many trial issues, including jury instructions and how exhibits would be handled, how trial procedures would be handled, how jury selection would be handled. So I think if you look at that point in time, that last continuance, you know, everyone was expecting to go to trial. And it is, of course, true that the other defendants did plead guilty. But that isn't, again, that didn't take away from at that point, you know, that everyone thought that the trial was going to happen. What about your response to the argument that maybe the first, certainly the first continuance was okay. Maybe the second one was okay. But by the third continuance for a detained defendant to have the length of the delays over his objection stretch for as long as it did here, but that's just crosses a line. What's your response to that? And what case do you have involving a detained defendant that involved an ends of justice delay of this length? Well, Your Honor, I think we did cite cases in our brief where there were continuances of similar lengths. And I know Your Honor maybe has concerns about the representation, but I think for the third continuance, you still have that representation from counsel that the continuance is for the purpose of counsel needs more time to prepare. And that is something that was explicitly mentioned in the order granting the third continuance that the defendant's own counsel needed time to prepare. And I believe he actually had another trial scheduled on the particular day of the scheduled trial date. In addition, I would note that after the third continuance, the defendant actually, he actually agreed to a fourth continuance that's not challenged, of course. So I think that shows that, you know, he was, he was willing to allow for more time. And it wasn't sort of consistent and repeated invocations of his right to speedy trial that you see in a case like, like Hall, for example. So for that reason, we do think that that case is distinguishable. And all of these continuances were amply supported by the record. What's the best case on your side? Remind me for a detained defendant, like how many days is reasonable to be carried along so that other co-defendants can be tried along with them? Your Honor, I would have to, you know, we did cite cases of several cases of similar length in our brief. And I don't know offhand which is the best one for detained, detained defendant. But I think, again, you have to look at the fact that the defendant, it wasn't a consistent invocation that he asked for a fourth continuance after this, that his own counsel said he needed time to prepare. So we do think those are distinguishing circumstances. And the length, the length was, it was less than the time in Messer. It was much less just around a year as opposed to 21 months. And analyzing the length, the court did not place a focus on the fact that the defendant was detained. So we do think the continuances were reasonable and granted without procedural or substantive error. I would just also address the Pinkerton claim. I think the key point for this claim, as Your Honor noted, is this court has held over and over again for 30 years that Pinkerton liability applies to 924C. And under Miller v. Gammy, the defendant has a heavy burden to overcome that case law, I think, especially when you put in plain error view. I mean, he just hasn't done it. In terms of the Davis case, I just don't think the case is very relevant. It doesn't, doesn't use the word Pinkerton liability. It's not about conspiracy. It's not even about the elements clause. Exactly. And, Your Honor, I think the defendant's argument, he's trying to infer attention by but that's based on a mistaken premise. As this court recognized in Houston, Pinkerton liability doesn't change the mens rea for federal crimes. It doesn't reduce the mens rea for federal crimes. In that sense, it's similar to aiding and abetting liability. The theory under Pinkerton is that when a defendant enters into a conspiracy and a co-defendant commits a crime that's reasonably foreseeable, that mens rea is imputed to the defendant. And a Pinkerton conviction is treated the same as a conviction of a principal. There's no distinction in this court's case law between the two. What's your response to your opponent's reliance on Rosemond? Your Honor, I don't think Rosemond is relevant for at least two reasons. I think first is the case is about aiding and abetting liability. And this court has just recognized that Pinkerton liability and aiding and abetting liability are different. Why is that? They seem to me to serve the exact same purpose. Why should the rule be different? Both vicarious liability. Right. Why should the rule be different on the Well, I think they're just doctrines rooted in different principles. One is in conspiracy and another is in terms of aiding and abetting a crime. And this court has recognized in some context Pinkerton liability is broader. But even if Rosemond has lessons for Pinkerton liability, I think what other circuits have recognized is that Rosemond made aiding and abetting liability more like Pinkerton liability. And ultimately, the holding in that case is that if someone's going to be held liable as an aide or better under 924 C, they need to have advanced knowledge of the firearm. They can't be held liable when there's sort of an unexpected firearm that's pulled out. And that seems like that should be the same rule on the Pinkerton side. That's what I'm asking. Well, because that definitely was not the way the jury was instructed here, right? Well, they were instructed that it needed to be reasonably perceivable that a firearm would be used. That's quite different from the mens re that the court demanded in Rosemond. That's what I'm saying. Why? Why would we not have the same mens re rule on the on the Pinkerton conspiracy side that we that we do on the aiding and abetting side? I'm just having a hard time seeing why those two doctrines should diverge in the way that you're advocating. Well, again, I don't think they diverge. I think this is something that the Seventh Circuit recognized. This sort of brings them together. If it needs to be reasonable, foreseeable that a firearm is going to be used, then the defendant's gonna have, you know, some suspicion, at least some knowledge that there's a chance it's going to happen. And in this case, I think to the extent that's an issue that the evidence was overwhelming that the defendant had advanced knowledge. Norman Speck testified that the defendant knew firearms were going to be used. And by the end of this crime, that by the end of the conspiracy, he was happy firearms were being used because he knew it made it easier to make easier to control the victims and easier to rob the bank. So you're arguing that the error is harmless, and you might be correct on that front. But I'm asking for the doctrinal rule that we are potentially going to announce in this case. You haven't really responded, I think, on that point. Why should the rule be different as to mens rea? Because reasonable foreseeability is not the same as the advanced knowledge mens rea requirement that the court demanded in those ones. And why should the rule be different in one context versus the other? I'm just I'm gonna take one last crack at asking that because you haven't really. I apologize if I haven't answered your question. I think the first answer is they're simply different doctrines. Aiding and abetting and Pinkerton liability have taken different paths. And Pinkerton liability, as the Supreme Court has has announced it, it only requires reasonable foreseeability. And I don't think that's something this court has the power to overrule. And again, I do think this this this court and the case we cite in a brief has has has noticed that Pinkerton liability and aiding betting liability, they just aren't always the same. So there's no reason to always interpret the same. But again, I think this is something the Seventh Circuit recognized that this brought the standards together. I don't think there's a lot of daylight between reasonable foreseeability and advanced knowledge of a firearm. And what the Supreme Court was ultimately getting at in Rosemont is that you don't want someone to be held liable when there's an unexpected use for firearm and the reasonable foreseeability standards going to prevent that. It's going to make sure that if the defendant in this case had no idea that there was a firearm going to be used, he's not going to be held liable. So I don't think there's a lot of daylight between those standards. And even if there is a distinction, there's there's it's just not required that this court interpret them, interpret them the same. And again, I, if all else fails, I do think the evidence that there was advanced knowledge of a firearm here was very strong. So for all of those reasons, we do think Rosemont, it's it doesn't doesn't speak to the issues here. And really, none of the cases the same for the objects of conspiracy, as you're going to recognize, that's that's certainly never been the line under Pinkerton. And there's a lot of precedent under the bridge. And I don't think this court can overrule it. And again, this was this was a case where there's no real unfairness with this rule, the defendant knew there was going to be armed robberies. So I would push back on the notion that this is sort of an unfair application. And I do see that I'm out of time. So if there are any further questions, I'm happy to answer them. But otherwise, we'll we'll submit in our brief. Okay, thank you. Very good. Thank you. Let's put two minutes on the clock for for the defendant. Thank you, Your Honor. I just focused on the speedy trial that claim. Um, I don't think the government really came up with a specific example of a detained defendant being delayed this long over a year. And I think that one year that's an important mark, because even in the Sixth Amendment, post indictment delay context, this is the dogged case from the initial to keep someone to have a case delayed that long. And that and that's why, you know, even if you want to say the first continuance or the second continuance perhaps was reasonable. By the time you got to that last continuance, which delayed the trial out over a year, that's when things are certainly getting unreasonable. And that last application for the continuance. Yes, we it's our position that the representations in that declaration were but even as to the other attorneys, it was really thin. I think one attorney said he had a not one Ninth Circuit argument. Um, another attorney said he had unidentified immigration matters. Uh, there was there was no substantial justification. And then, of course, the representations about Mr Henry's attorney were just flat out not true. I mean, it was saying he had a trial in the case that he was no longer even the lawyer of record on. Um, and when you take all those factors, you take him being detained the length of the delay, and then I think the government is now saying that it was in that last period of delay where they were able to get the cooperating witnesses that they were saying today that everybody was ready to go to trial or was planning to go to trial. And in that last delay, apparently they were able to obtain three cooperating witnesses to testify against Mr Henry. That that makes the totality of the circumstances here particularly prejudicial. Um, and we would ask the court to reverse on that. Okay. Very good. Thank you both for your arguments. Kiss just argued is submitted.
judges: Christen, Watford, Rosenthal